[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married on May 12, 1973 in New York. By complaint dated November 8, 2000, the Husband instituted this action claiming a dissolution of marriage, joint custody and visitation with the minor child, an equitable division of the property and other relief as law and equity might provide. The Wife filed an Answer and Cross Complaint dated CT Page 8211 December 13, 2000 claiming a dissolution of marriage, custody of the minor child, alimony, child support, transfer of property and other relief as law and equity might provide.
One minor child was born issue of this marriage: Kimberly born on March 6, 1990. The Husband is age 52 and in excellent health. He lives in Ohio with his girlfriend. The Husband is a pilot flying cargo for Atlas Air, Inc. In his Memorandum of Decision dated January 18, 2002, after an extensive hearing on the issue of pendent lite support, the Court (Doherty, J.) found that the Husband has an earning capacity of at least $65,000.00. There was no credible evidence presented at trial to refute that finding. Therefore, pursuant to Breen v. Phelps, 186 Conn. 86 (1982) this court adopts that finding as the fact of this case and enters it's order consistent with that finding.
The Wife is age 52 and has had, and continues to have, major medical problems. Judge Doherty's decision well documents the Wife's illnesses and the impact those illnesses and conditions have had on her ability to work. The Wife testified that her problems remain on going, with an additional surgery as recently as June 5th. There was no credible evidence presented at trial to refute the January finding that the Wife has medical care and conditions which make it extremely difficult for her to seek and maintain full time employment on a long term, permanent basis.
The marriage of these parties has been deeply impacted by the nature of the Husband's employment. He was away for long periods of time. The parties effectively separated in 1995. The Husband continued to lead the Wife to believe that in spite of this separation their marriage was still savable, as evidenced by the cards and letter which the Wife introduced as Exhibits 0 and R. As late as 1999 and 2000 the Husband was Leading the Wife to believe that the marriage was still viable and that they would be living in Florida together. It was not until the Wife discovered that the Husband had a relationship with another woman and that relationship had been long term, that the Wife recognized that the marriage was over.
In spite of the fact that this marriage has had difficulties for many years, difficulties which were the fault of both parties, this court finds that the Husband is substantially responsible for the break down of the marriage due to his affair and his misleading the Wife as to the true future of their marriage.
The Court finds that residence requirements have been satisfied and neither party has been the recipient of public assistance. All pertinent criteria outlined in Chapter 815j of the General Statutes were considered by the court in the entry of the following orders as well as the CT Page 8212 evidence, testimony and claims of law made by the parties:
ORDERS:
DISSOLUTION OF MARRIAGE
A decree dissolving the marriage on the grounds of irretrievable breakdown shall enter on July 1, 2002.
CUSTODY/VISITATION
By agreement of the parties, the Wife and the Husband shall have joint custody of the minor child, physical custody with the Wife. The parties shall consult with each other concerning all major events affecting the child's life, but in the event that they are unable to agree, the Wife shall have the final decision making authority.
The Husband shall have the rights of reasonable, flexible and liberal visitation with the minor child. He shall be entitled to two weekends per month with the child and such other days as may be convenient for him, being mindful of the child's school and extra curricular activities.
The Husband shall notify the Wife no later than the 27th day of each month, the days he shall exercise his visitation for the next month.
The parties shall alternate all major holidays, adjusting them according to the Husband's flying schedule, except that the child shall always be with the Wife on December 24 and 25 and be with the Husband on December 26, 27, 28. The parties shall each have equal time with the child on her birthday.
During the summer, each parent shall be entitled to 4 weeks of uninterrupted vacation time with the child, with notification by May 1 of each year as to the time they wish to spend with the child. The parent not with the child shall be informed of all travel plans of the child and have reasonable telephone contact with the child.
The parties shall equally divide all school vacation breaks.
The child shall not travel unaccompanied until such time as the child attains the age of 16 years.
There shall be reasonable telephone and email contact between the child and the Husband.
The Husband is asking that the child be allowed to attend his family CT Page 8213 reunion on July 12, 13 and 14, 2002. The child is enrolled in a summer theater camp which finishes on July 12 with a group production. The Wife's mother has purchased Broadway show tickets to a Saturday matinee on July 13, 2002. Pendent lite orders entered on August 2, 2001 required that the child not have contact with the Husband's girlfriend until after the dissolution. A family reunion (which the girlfriend has attended in the past) is not the proper manner or setting to introduce the child to the Husband's girlfriend. As important as it is for the child to have contact with and a relationship with the Husband's family, the court orders that the child not attend the reunion this year, but shall do so in all subsequent years during the Husband's summer vacation time with the child. The Husband shall use a more appropriate setting to introduce the child to his girlfriend without the scrutiny of his family.
UNALLOCATED ALIMONY AND SUPPORT
The Husband shall pay to the Wife unallocated alimony and support of $3,000.00 per month until the death of the Husband, the death of the Wife, the Wife's remarriage, or the Wife's cohabitation as defined by statute. When the Husband reaches the age of 60 years, which is the mandatory age of retirement from his present flying position, there shall be a second look, assuming that his obligation to pay alimony continues.
The child support guideline study provided by the Husband based upon his financial affidavit, indicates a child support order of $159.00 per week. This court has found that the Husband has an earning capacity of $65,000.00 per year, which would require an order of $165.00 per week. Since the court is entering an unallocated order in excess of the guidelines, court finds that application of the guidelines is inappropriate and inequitable due to the deviation criteria of coordination of the total family support.
Since the parties did not supply the court with a waiver of an income withholding, an immediate income withholding is ordered.
MEDICAL INSURANCE AND UNREIMBURSED MEDICALS — CHILD
The Husband shall maintain, at his sole expense, the present medical/dental insurance for the child as long as he is obligated to pay child support for said child.
Pursuant to the Child Support Guidelines, the Husband shall pay 83% of the unreimbursed medical/dental expenses and the Wife shall pay 17% of same. However, the Husband shall continue to pay the entire cost of the child's orthodontic work. CT Page 8214
The Wife shall not contract for any extraordinary expenses for the child without first consulting with the Husband except in case of emergencies.
The provisions of 46b-84 (e) shall apply.
MEDICAL INSURANCE — WIFE
The Wife shall be responsible for her own medical insurance coverage, however the Husband shall cooperate with the Wife obtaining COBRA benefits under this policy.
LIFE INSURANCE
The Husband shall maintain life insurance in the amount of $500,000.00 naming the Wife as the beneficiary. Since the Husband failed to continue to maintain his major life insurance policy, he shall present proof to the Wife by August 1, 2002 that he has reinstated the policy. Thereafter, the Husband shall provide proof to the Wife of said insurance each year on January 15th.
PERSONAL PROPERTY
The parties shall divide their personal property to their mutual satisfaction. If they are unable to do so, they shall submit their dispute to Family Relations for binding resolution.
REAL PROPERTY
The parties jointly own the following real property:
(1) 58 Dick Finn Road, New Fairfield, Connecticut with an agreed upon value of $345,000.00 and a mortgage of $110,400.00;
(2) 5500 Island Walk Circle, Naples, Florida with an agreed upon value of $177,060.00 and a mortgage of $122,000.00.
The Husband shall Quit Claim to the Wife all of his right title and interest in and to the property at 58 Dick Finn Road, New Fairfield, Connecticut within 30 days of the date of this dissolution and simultaneous to the Wife's transfer to him as ordered below. The Wife shall be solely responsible for all costs associated with said property, including the mortgage, taxes (both past and future) and insurance, and indemnify and hold the Husband harmless in regards to same. The $15,000.00 being held in escrow pursuant to court order shall be released to the Wife immediately. CT Page 8215
The Wife shall Quit Claim to the Husband all of her right, title and interest in and to the property at 5500 Island Walk Circle, Naples, Florida within 30 days of the date of this dissolution and simultaneous to the Husband's transfer to her as ordered above. The Husband shall be solely responsible for all costs associated with said property, including the mortgage, taxes and insurance, and indemnify and hold the Wife harmless in regards to same.
DIVISION OF DEBTS
Except as otherwise provided herein, the Husband shall be responsible for the debts on his financial affidavit and the Wife shall be responsible for the debts on her financial affidavit.
STOCKS, BONDS, TAX DEFERRED SAVINGS ACCOUNTS, IRA'S, BANK ACCOUNTS
The parties separately and jointly owned the following, in the approximate amounts as listed on their financial affidavits:
First National Bank of Naples Checking Account — $1,000.00 Fleet Bank — Checking $8,000.00 5th 3rd Bank of Columbus — Checking $2,500.00 112 Shares of IBM Stock market value IBM Tax Deferred Savings Plan $141,044.00 VLO 401K $15,448.00 Union Savings #10,71700234 $5,363.00 USAA Growth Fund $1,300.00 Hudson Valley Federal Credit Union $1,626.00 Fleet Checking/Savings $190.00 Savings Bank of Danbury — Checking $2,000.00 GM Stock — 21 shares market value Delphi Stock — 13 shares market value Union Savings $5,700.00 Hudson Valley Credit $380.00 Fleet IRA $26,700.00 USAA $1665.00 TDSP IBM $35,000.00 _____________
Approximate Total $243,854.00
The parties shall equally divide all of the above assets within 30 days of the date of this dissolution. In the event that a QRDO is necessary to divide any of these accounts, the cost of preparation of the necessary documents shall be shared equally by the parties. The Superior Court shall retain jurisdiction over the accounts until they are distributed CT Page 8216 between the parties and to resolves any disputes which may arise with regard to the preparation and execution of the QDRO.
Once the above accounts have been equally divided, the Husband shall immediately pay to the Wife her attorney's fees of $28,675.00. During the pendency of this action the Husband has used joint accounts to pay his attorney's fees and other costs and expenses.
The parties entered into a written Stipulation dated June 27, 2002 regarding monies to be held for the benefit of the minor child's college education. That Stipulation is found to be fair and equitable and orders are entered in accordance with that Stipulation. The Stipulation is attached hereto and made a part hereof
TAX RETURNS
The parties have filed separate tax returns since 2000. In the past the parties filed joint tax returns. If there is any liability, cost, or penalty associated with the previous fillings of joint income tax returns, the party responsible for the penalty shall be solely responsible for same and indemnify and hold the other party harmless from same.
The parties shall alternate taking the child as a dependent for income tax purposes, the Wife shall take the child as a dependent in even years and the Husband in odd years.
MOTOR VEHICLES
The parties shall be entitled to the respective motor vehicles as follows: The Wife shall retain the 2000 Honda Odessey and the Husband shall retain the 1991 Toyota and his leased Acura. Each party shall sign the necessary documents to effectuate this order and if there is a loan or lease on the vehicle, the party receiving the vehicle shall indemnify and hold the other harmless in regards to such loan or lease.
FREQUENT FLIER MILES
The Husband shall retain all the frequent flier miles, so as to help reduce the cost of his visitation with the child.
MISCELLANEOUS
Each party shall sign any necessary documents to effectuate the orders contained herein. CT Page 8217
 ___________________ FRANKEL, J.